# Mackintosh, *et al. v.* Stewart.

*Bill to Abate Purchase Price and to Enjoin Collection of Note.*

(Decided February 6, 1913. Rehearing denied April 23, 1913. 61 South. 956.)

1. *Covenants; Construction; "Grant, Bargain, Sell and Convey."*—Unaided by statute the words, "grant, bargain, sell and convey" operate as a conveyance, but warrant nothing as to title, and the grantee takes only such title, interest or estate as the grantor had at the time the conveyance was executed and delivered.

2. *Same; Seisin.*—An express covenant that the grantor is seised of an indefensible estate in fee, is a covenant for that complete title which is formed by the union in one person of right and possession.

3. *Same; Breach.*—A covenant that the grantor is seised in fee of an indefeasible estate, is broken as soon as made, if there is an outstanding superior title, or an encumbrance diminishing the value or enjoyment of the land; or generally speaking, if the grantor has not substantially the very estate both in quality and quantity which he professes to convey by the deed.

4. *Same; Implied Covenants; Statute.*—Under section 3421 Code 1907, the covenant of seisin is to be taken subject to the same limitations as the covenants against encumbrances, and hence, implied covenants are limited to the acts of the grantor and those claiming under him, and do not extend to defects of title anterior to the conveyance to him.

5. *Same.*—Covenants of title are always intended to guard against titles adverse to the covenantor, but where they result from the wrongful acts of strangers subsequent to the conveyance, such covenants are not effected.

6. *Same; "Suffered."*—Under section 3421, Code 1927, an implied covenant of an indefeasible estate in fee for both right and possession, as against any act done or "suffered" by the grantor, is broken by an adverse possession which by limitations has ripened into title at the time of the conveyance, and, since adverse possession does ripen into title, it is to be regarded as an actual estate or interest, and

[Mackintosh, et al. v. Stewart.]

therefore, an encumbrance on the title from the commencement of the covenant. The word "'suffered" not being capable of being confined to the voluntary acts of the owner.

7. *Same; Breach; Action for.*—An averment that various persons were in the actual adverse possession of particularly described parts of the land at the time of the conveyance to complainant, without showing when such possession began is a sufficient allegation of the breach, at the moment of conveyance, of the covenant for seisin for both right and possession as against wrong doers implied by section 3421, Code 1907, or of the covenant for seisin in its narrow sense of mere actual possession, and prima facie states a case of the grantee's loss of possession and title through the fault of the grantor.

8. *Same; Presumption; Burden of Proof.*—A grantor conveying with a covenant as implied under section 3421, Code 1907, will be presumed to have had knowledge of the facts and effect of an adverse possession, and because of such presumed knowledge of the title which he undertakes to assure, he has the burden of pleading and proving such fact if such adverse possession has ripened into an indefeasible title before he claimed the land.

9. *Same; Nature of Remedy.*—The remedy on an implied covenant is always administered for the purpose of protecting the vendor from losing both his land and the price, and at the same time securing to the purchaser the full benefit of his contract.

10. *Same; Grantee's Knowledge.*—A grantee's notice or knowledge of an encumbrance or of a paramount title, does not impair his right of recovery upon covenants of warranty which cover known as well as unknown encumbrances or defective titles, however full his knowledge may be; the statute expressly provides that the grantee may assign breaches as if such covenants were expressly inserted.

11. *Same; Recovery; Effect as Rescission.*—A recovery in an action for breach of a covenant for title works a rescission pro tanto by revesting in the covenantor the title which he has conveyed, such as it is.

12. *Champerty and Maintenance; Enforcement by Grantee.*—The express or implied covenants of a deed of land adversely held when conveyed are available to the grantee, notwithstanding the rule against champertuous conveyances.

13. *Contracts; Third Persons.*—The agreement of a bank with a purchaser, after the execution of the mortgage to it, to pay the balance due to the vendor, inured to the benefit of the vendor.

14. *Set-Off and Counter Claim; Equitable; Non-Residence.*—The non-residence of a party against whom a set-off is claimed is of itself ground for equitable relief, allowing the set-off, and also good ground for recoupment.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by D. H. Stewart against James A. Mackintosh, and others, to abate the purchase price of land, and to

enjoin a bank from paying certain notes until the matter of the purchase price is determined. From a decree overruling demurrers to the bill respondents appeal. Affirmed.

C. J. TORREY, for appellant. There was no equity in the bill and the demurrers numbered 3, 4, 8 and the additional demurrers should have been sustained.—*Cullum v. Branch Bank,* 4 Ala. 21; *Thompson v. Christian,* 28 Ala. 399; *Tobin v. Bell,* 61 Ala. 125; *Griel v. Lomax,* 86 Ala. 135; *Carrier v. Eastis,* 112 Ala. 474; *Rarden v. Badham,* 142 Ala. 502, and authorities cited. It is clear from these authorities that complainant has no remedy either in law or in equity on the facts stated in his bill. A purchaser in possession under deeds with covenants of warranty cannot maintain a bill to enjoin recovery of the purchase money, and to set off damages resulting from breach of covenants merely because the vendor has no title, or has a defective title.—*Gilham v. Walker,* 135 Ala. 459; *Williams v. Neal,* 152 Ala. 435; *Bell v. Thompson,* 34 Ala. 663; *Nelms v. Pruitt,* 37 Ala. 389; *Holly v. Young,* 27 Ala. 203; *Gipson v. Marquis,* 29 Ala. 668. Counsel discusses the other assignments of error, but without citation of authority.

ERVIN & MCALEER, for appellee. The mere statements of the facts of the bill show that complainant was without an adequate remedy at law.—*Dunn v. White,* 1 Ala. 646; *Cullom v. Branch,* 4 Ala. 31. The fact that the purchaser knew of the adverse holding would be no defense by the grantor in an action on the covenant.—*Copeland v. McAdory,* 100 Ala. 560; *Dunn v. White, supra.* As to the measure of damages, see 69 Ala. 502; 59 Ala. 612; 99 Am. Dec. note 78; 24 Am. St. Rep. note 267. Partial failure of consideration will au-

[Mackintosh, et al. v. Stewart.]

thorize recovery.—*Cullom v. Branch Bank, supra.* The failure to deliver possession was a breach of the covenant of seisin contained in section 3421, Code 1907; *Cullom v. Branch Bank, supra;* 35 Cyc. 1371; 16 Cyc. 601; *Roebuck v. Dupuy,* 2 Ala. 537; *Gee v. Phar,* 5 Ala. 587.

SAYRE, J.—The bill shows that Stewart bought a tract of land from Mackintosh, who resides in the state of New Jersey, giving notes for deferred payments. By agreement, Mackintosh's deed was made to Tonsmeire "as trustee," without more to define the trust. There were no express covenants, but the words of conveyance were, "grant, bargain, sell and convey." The City Bank & Trust Company of Mobile had let Stewart have money with which to make a partial payment, and a few days after the deed of trust had been executed Stewart and the bank entered into a formal agreement by which the bank, among other things, agreed to pay the balance due to Mackintosh, looking for reimbursement to the proceeds of sales of the land, which was to be subdivided and sold in lots by Stewart. At the time of these transactions—they were one in effect—strangers were in the adverse possession of parts of the tract claiming to own the same. The purpose of the bill is to have a pro rata abatement of the purchase price on account of those parcels adversely held, and to that end an ancillary prayer is that the bank be enjoined from paying any balance to Mackintosh until the proper amount of the abatement be ascertained; complainant offering to pay that amount when ascertained. The chancellor overruled a demurrer to the bill, and Mackintosh appeals.

Appellant's main contentions are that complainant by his bill shows no wrong, or, if so, that he has an

adequate remedy at law; but we, after due considera-
tion, have reached the conclusion that these conten-
tions ought not to be sustained.

Complainant's specifically alleged grievance is that
when he took his deed he failed to get actual posses-
sion of certain parts of the property bargained for—
this because they were at the time in the adverse pos-
session of strangers who still hold them; the averment
that this possession has continued down to the time of
suit brought being important only as showing that com-
plainant has not as yet had a remedy—and the question
is whether he took any assurance for the possession.
Unaided by the statute (section 3421 of the Code), the
words of the deed to plaintiff, or to Tonsmeire for plain-
tiff's use and benefit, operated as a conveyance, but
warranted nothing as to title. Complainant took only
such title, estate, or interest as the vendor had at the
moment the conveyance was executed by delivery. It
becomes necessary then to consider how the deed is in-
fluenced as to its operation and effect by section 3421,
which, by the provisional elimination of words and
phrases immaterial to the purposes of this case, may be
read as follows: In all conveyances of estates in fee,
the words "grant," "bargain," "sell," or either of them,
must be construed an express covenant to the grantee
that the grantor was seised of an indefeasible estate in
fee simple, free from incumbrances done or suffered by
the grantor. It is uniformly held that the covenant
that the grantor is seised of an indefeasible estate in
fee, when expressly made, is a covenant for that com-
plete title which is formed by the union in one person
of right and possession, and is broken as soon as made,
if there is an outsanding superior title, or an incum-
brance diminishing the value or enjoyment of the land,
or if, in general, the grantor has not substantially the

very estate, both in quantity and quality, which he professes by his deed to convey.—*Moore v. Johnston,* 87 Ala. 220, 6 South. 50; *Copeland v. McAdory,* 100 Ala. 553, 13 South. 545. But the implied covenant of the statute is another thing.

This statute, dating back to territorial times in this state, was copied almost literally from a statute of Pennsylvania which antedated the Revolution. It has been substantially enacted in a number of states, and without exception—aside from an apparent dictum in *Funk v. Voneida,* 11 Serg. & R. (Pa.) 111, 14 Am. Dec. 617, referred to in our case of *Roebuck v. Duprey,* 2 Ala. 535, and corrected by the Supreme Court of Pennsylvania in *Knepper v. Kurtz,* 58 Pa. 484—Chief Justice Tilghman's exposition of the true meaning and effect of the statute in *Grantz v. Ewalt,* 2 Bin. (Pa.) 95, has been followed.—*Roebuck v. Duprey, supra; Griffin v. Reynolds,* 17 Ala. 198; *Parker v. Parker,* 93 Ala. 80, 9 South. 426; *Heflin v. Phillips,* 96 Ala. 561, 11 South. 729; *Douglass v. Lewis,* 131 U. S. 75, 9 Sup. Ct. 634, 33 L. Ed. 53; Rawle on Covenants, § 285 et seq.; 8 Am. & Eng. Encyc. 79, note 3; 11 Cyc. 1047, note 31, where the cases are collated. All the authorities hold that the covenants implied by the statute are limited to the acts of the grantor and those claiming under him, and do not extend to defects of title anterior to the conveyance to him. For more pointed answer to the specific argument which appellee has based upon the frame of the statute, we quote from Rawle on Covenants for Title: "The construction of the statute was carefully considered [in *Gratz v. Ewalt, supra*], and it was held that the first covenant [that the grantor was seised of an indefeasible estate in fee simple], which standing by itself would be unlimited, must be taken in connection with the subsequent one against incumbrances which is limited, and

consequently that none of the covenants implied by the statute were to be construed as extending beyond the acts of the covenantor; and the construction thus given has never been departed from in Pennsylvania; and it is said by Chancellor Kent (4 Kent's Com. 474) that by the decisions in *Gratz v. Ewall* the words of the statute are divested of all dangerous tendency, and that it will equally apply to the same statutory language in other states."—Section 285. In conclusion on this point, the construction of the statute to the general effect that the first covenant must be taken subject to the same limitations as the second has been too long followed here and elsewhere, and the statute itself, with this construction on it, has been too often re-enacted in the various codifications of the laws of this state, to be now brought into question; and, but for the earnest insistence of counsel for appellee to the contrary notwithstanding our cases, we would have been content in the beginning to say with Dargan, C. J., in *Griffin v. Reynolds, supra,* that we considered it the settled law. We have undertaken only to show how generally the construction of our cases is followed.

On the other hand, appellant urges that the authorities to which we have referred conclude the case in his favor. Difficulties arise in any view, but our best judgment is that the implied covenant of the statute means something more than appellant's contention would concede. The covenant is for an indefeasible estate in fee, for both right and possession, as against any act done or suffered by the grantor. The covenants of a deed of land adversely held are available to the grantee, and this was always so notwithstanding the rule against champertous conveyances (*Abernathy v. Boazman,* 24 Ala. 189, 60 Am. Dec. 459) which obtained until recently in this state. The fact of such possession and its

duration are important elements in determining the question of a breach of the covenants for a complete title. Where the hostile possession has ripened into an indefeasible title, under the operation of the statute of limitations, it is obvious ·that the covenant for seisin is broken.—*Wilson v. Forbes*, 13 N. C. 30; Rawle on Covenants (5th Ed.) § 54. And since adverse possession, enduring for the statutory period of limitation, will ripen into title, no sufficient reason appears why such possession should not be regarded as an actual estate or interest, and therefore as an incumbrance upon the title, from the moment of its commencement. Covenants for title are always intended to guard against titles adverse to the covenantor's although they may result from the wrongful acts of strangers. A different question would be presented by the case of interruptions subsequent to the conveyance, by persons not claiming lawfully. Against them no covenant is intended to protect. But an adverse possession held at the time of a conveyance is a charge upon the property— at all events, an ejectment is necessary to dispossess the wrongful holder. Its presence is therefore a breach of the covenant for an indefeasible fee.—Sugden on Vendors (14th Ed.) 601.

The word "suffered," used in the statute, implies that its influence is not to be confined to the voluntary acts of the grantor, and in Pennsylvania it is held that the grantor is liable on his statutory covenant where a judgment ·lien has been fastened on the land by adversary proceedings, and that the statute extends to the case of a municipal assessment for local improvement during his title, though there was no personal liability.—*Shaffer v. Greer*, 87 Pa. 370. It would seem that the same principle ought to reach the case of an adverse possession suffered by the grantor, and it will be noted that

the cases heretofore have not dealt with the question of an adverse possession as affecting the statutory covenant. In all of them it appears that the grantee received possession with his deed.

The gist of the averment as to a breach is that various persons were in the adverse possession of particularly described parts of the land at the time of the conveyance to complainant. It is not made to appear when these possessions began, and it is insisted that the bill, construed against the pleader, is faulty in failing to show that these strangers went into possession while the grantor was the owner, and hence that they do not appear to have been suffered by the grantor. It is a possession taken and held under claim of title, not a mere intrusion, which will affect title. The complaint is of an adverse possession held at the time of the conveyance. This averment, with whatever strictness construed, makes the case of a breach of the implied covenant for seisin as against wrongdoers at the moment of conveyance, of the covenant for seisin in its narrow sense of mere actual possession, a possession complainant was entitled to have for whatever advantage it might afford him. And, prima facie, it makes the case of grantee's loss of possession and title by grantor's fault, for since the latter has according to the measure of the statute assumed to contract for the soundness of the title he undertakes to convey, it must be presumed the fact and the effect of the adverse possession is peculiarly within his knowledge. The consequences in the two cases are the same, the remedy on the covenant being always administered with the purpose, while securing to the purchaser the full benefit of his contract, to protect the vendor as for as practicable from losing both the land and its price. A recovery in an action on the covenant works a rescission—in this case a pro tanto rescission—by re-

[Mackintosh. et al. v. Stewart.]

vesting in the covenantor the title, such as it is, which he has conveyed. And because also of grantor's presumed knowledge of the title which he undertakes to assure, if the adverse possession has been so timed as to its beginning and has endured so long as to take it without the implied covenant—that is, had ripened into an indefeasible title before Mackintosh laid claim to the land—the averments of the bill put upon him the burden of pleading and proving the fact.—*Copeland v. McAdory, supra.*

It is not made to appear whether complainant had notice of the various adverse possessions averred in the bill; but his knowledge, if assumed, would be of no consequence, for "knowledge, or notice, however full, of an incumbrance, or of a paramount title, does not impair the right of recovery upon covenants of warranty. The covenants are taken for protection and indemnity against known and unknown incumbrances or defects of title."—*Copeland v. McAdory, supra.* And the provision of the statute is that the grantee "may, in any action, assign breaches as if such covenants were expressly inserted."

The bank has assumed to pay the balance of the purchase money. This promise inured to the benefit of Mackintosh. The bank may not be inclined to deny voluntarily any demand upon it for payment, or to submit to the expense and inconvenience of a suit by Mackintosh. In any event, complainant's only assured safety is to have his set-off allowed. It is now settled by a strong preponderance of authority that the nonresidence of a party against whom a set-off is claimed is of itself good ground for equitable relief allowing the set-off. So of recoupment even.—*Porter v. Roseman,* 165 Ind. 255, 74 N. E. 1105, 112 Am. St. Rep. 222, 6 Ann. Cas. 718, and authorities collected in the note.

We have said enough to indicate our views on all phases of the question as presented by the demurrer and the assignments of error. Our opinion is that the decree of the court below should be affirmed.

Affirmed.

Dowdell, C. J., and McClellan and Somerville, JJ., concur.