The question here is what liability do grantors have to remote grantees or their assigns under a warranty deed and a statutory warranty deed where certain covenants of title contained in the deeds are found to run with the land?
On February 18, 1976, Albert M. Owen, an unmarried man, executed a warranty deed purporting to convey certain real property in Baldwin County to his brother *Page 484 
and sister-in-law, James R. Owen, Jr., and Cheryl C. Owen. The deed, which was recorded on March 8, 1976, in Baldwin County, contained the following covenants of title:
 "The party of the first part [Albert Owen] for himself, his heirs, executors and administrators, hereby covenants and warrants to and with the said parties of the second part [James and Cheryl Owen], their heirs and assigns, that he is seized of an indefeasible estate in and to the said property; that he has a good right to convey the same as herein contained; that he will guarantee the peaceable possession thereof; that the said property is free from all liens and encumbrances, and that he will, and his heirs, executors and administrators will foreever warrant and defend the same unto the said parties of the second part, their heirs and assigns, against the lawful claims of all persons."
The warranty deed form was obtained from the law office of James R. Owen, Sr., the father of Albert and James Owen.
Subsequently, James and Cheryl Owen conveyed the Baldwin County property, purportedly conveyed to them, by statutory warranty deed[1] to Dennis C. Carlisle Jr., the brother of Cheryl Owen. The property was conveyed June 6, 1976, and the deed recorded in Baldwin County on July 14, 1976.
On June 10, 1976, Dennis Carlisle mortgaged the property to United Companies Mortgage and Investment of Mobile # 2, Inc., for $17,159.52. This mortgage was recorded on July 14, 1976, in both Mobile and Baldwin counties.
Dennis Carlisle mortgaged the property to GECC Financial Services (GECC) for $17,671.29, on November 8, 1977, apparently substituting mortgages and paying off the original mortgage. The mortgage to GECC was recorded in Baldwin County and a policy of title insurance naming GECC as the insured was issued shortly thereafter by Eastern Shore Title Insurance Corp., of Daphne, the agent for St. Paul Title Insurance Corp. (St. Paul Title). The title insurance was issued at the request of Dennis Carlisle.
When Dennis Carlisle subsequently defaulted on his mortgage payments, GECC attempted to foreclose on the property. The Circuit Court of Baldwin County found, however, that because Dennis Carlisle held no right, title, or interest in or to any of the property on the day the mortgage was executed, GECC was not entitled to foreclose on the property. GECC then brought suit against St. Paul Title, to collect its debt, and in addition the costs of litigation involved, all as provided for under the terms of the title insurance policy.
St. Paul Title, as subrogee of GECC, then filed a complaint against Albert Owen, James R. Owen, Jr., and Cheryl Owne, wherein St. Paul alleged that they had breached the covenants of title contained in the deeds executed and delivered by them. The trial court, after a non-jury trial, entered a judgment on behalf of the defendants. St. Paul appeals.
 I. The Liability of Albert Owen under the express covenants of title contained in his warranty deed.
The deed executed by Albert Owen, an unmarried man, purporting to convey property to James and Cheryl Owen, contained the following express covenants of title: a covenant of seizin; a covenant of right to convey; a covenant for quiet enjoyment; a covenant against encumbrances; and a covenant of warranty. See Wolff v. Woodruff, 258 Ala. 1, 61 So.2d 69
(1952); Blaum v. May, 245 Ala. 156, 16 So.2d 329 (1944);Russell v. Belsher, 221 Ala. 360, 128 So. 452 (1930);Mackintosh v. Stewart, 181 Ala. 328, 61 So. 956 (1913);Tuskegee Land Security Co. v. Birmingham Realty Co., 161 Ala. 542,49 So. 378 (1909). See also 21 C.J.S. Covenants §§ 40, 41, 42, 45 and 47 (1940). Of these *Page 485 
covenants, however, only the covenants of quiet enjoyment and warranty are said to operate in futuro for the benefit of the ultimate grantee. Musgrove v. Cordova Coal, Land ImprovementCo., 191 Ala. 419, 422, 67 So. 582, 583 (1914). Until broken, these two covenants run with the land to the heirs of the grantee, or if the land is conveyed or assigned, to the assignee, so that when they are broken, the heir or assignee injured by the breach can maintain an action against the covenantor. 20 Am.Jur.2d, Covenants, Conditions, Etc., § 51 (1965), Cummings v. Alexander, 233 Ala. 10, 169 So. 310 (1936);Prestwood v. McGowin, 128 Ala. 267, 29 So. 386 (1900). Thus, it is generally recognized and held that when a covenant of title runs with the land, all grantors, back to and including the original grantor-covenantor, become liable upon a breach of the covenant to the assignee or grantee in possession or entitled to the possession at the time, and the latter may sue the original or remote grantor, regardless of whether he has taken from the immediate grantor with a warranty. 21 Am.Jur.2d,Covenants, Conditions, Etc. § 119 (1965).
Because the covenants of quiet enjoyment and of warranty are virtually identical in operation, whatever constitutes a breach of one covenant is a breach of the other. Prestwood v. McGowin,supra, 128 Ala. at 272, 29 So. at 388; 20 Am.Jur.2d, Covenants,Conditions, Etc. § 50 (1965). Neither covenant is breached until there is an eviction under paramount title. Blaum v. May,supra, 245 Ala. at 158, 16 So.2d at 331. The eviction may be either actual or constructive. Prestwood v. McGowin, supra,128 Ala. at 272, 29 So. at 388.
It has been said that an outstanding title that could be asserted in a judicial proceeding against the party in possession is equivalent to an eviction. Musgrove v. CordovaCoal, Land Improvement Co., 191 Ala. at 423, 67 So. at 583. Likewise, a final judgment or decree adverse to the covenantee's title or right to possession constitutes a sufficient constructive eviction to entitle the covenantee to sue for breach of the covenant of warranty. 20 Am.Jur.2d,Covenants, Conditions, Etc., § 62 (1965).
Here, the breach occurred when the trial court ruled in the foreclosure proceedings that Dennis Carlisle possessed no interest in the property which had been mortgaged, thereby frustrating GECC's attempt to foreclose on the property purportedly conveyed to Carlisle in fee simple.
We hold that the covenant of quiet enjoyment and warranty provided by the terms of the warranty deed executed by Albert Owen ran with the land purportedly conveyed by that instrument. We further hold that because someone other than the original grantor-covenantor in fact possessed paramount title, appellant is entitled to assert a claim for the breach of the covenants of title, as its subrogor was the ultimate grantee or assignee who was in possession at the time the covenants were broken.
II. The liability of James and Cheryl Owen under the covenants of title contained in their statutory warranty deed.
The deed executed by James and Cheryl Owen contained no express covenants of title, but it did use the words, "grant, bargain, sell and convey." In all conveyances of estates in fee where the words "grant, bargain, and sell" appear, the deed is construed by statute as containing the following covenants of title: a covenant of seizin; a covenant against encumbrances; and a covenant of quiet enjoyment. Code 1975, § 35-4-271.
Appellant asserts that James and Cheryl Owen are liable for a breach of the implied covenant of quiet enjoyment contained in the statutory warranty deed, and that such a covenant runs with the land so as to benefit a remote grantee or assign. Unlike the express covenants of title found in a general warranty deed, however, the implied covenants of title contained in a statutory warranty deed are more limited in effect. *Page 486 
In the early case of Heflin v. Phillips, 96 Ala. 561,11 So. 729 (1892), the Court noted: "In construing this statute [predecessor of § 35-4-271] this Court declared that the words `grant, bargain, sell' do not import an absolute general covenant of seizin against incumbrances and for quiet enjoyment, but that they amount to a covenant only against actsdone or suffered by the grantor and his heirs." 96 Ala. at 562,11 So. 730. (Emphasis added.) See also Griffin v. Reynolds,17 Ala. 198 (1850). More than twenty years after Heflin, the Court remarked: "All authorities hold that the covenants implied by statute are limited to the acts of the grantor and those claiming under him, and do not extend to defects of title anterior to the conveyance to him." Mackintosh v. Stewart,181 Ala. 328, 333, 61 So. 956, 958 (1913).
In Mackintosh, the immediate grantee (Stewart), prevailed in enforcing the implied warranty of seizin contained in a statutory warranty deed against the grantor (Mackintosh). The grantor had allowed part of the subject property to be adversely possessed during his period of ownership. Although the grantee succeeded in showing that adverse possession took place at least partially during the period in which the grantor held title to the property, the Court suggested the outcome of the case could have been different had the grantor pleaded and proved that adverse possession had ripened into title prior to the grantor's laying claim to the subject property.181 Ala. at 337, 61 So. at 959. This result would have ensued in that instance, because the defect in the title would have been anterior to the conveyance to Mackintosh by his grantor. Although Mackintosh would have been without good title to convey to Stewart, Mackintosh would not have been liable to Stewart under the statutory warranty deed's inplied covenants of title because Mackintosh would not have suffered or caused any of the title problems.
James and Cheryl Owen conveyed their complete, albeit non-existent interest, in the subject property to Dennis Carlisle by statutory warranty deed. By so doing, they merely warranted that they had not conveyed title to anyone else; that they had not allowed the property to become encumbered while they held purported title; and that they had not caused or suffered anyone to do anything that would interfere with the property's quiet enjoyment by the grantee, the grantee's heirs or assigns. Because the record indicates that James and Cheryl did nothing to affect the purported title they conveyed, they did not breach any of the covenants of title contained in the statutory warranty deed delivered to Dennis Carlisle and are therefore not liable to the appellant, as subrogee of GECC.
 III. Damages for breach of covenants of title.
Appellant asserts that it is entitled to recover, as damages, the amount of mortgage proceeds paid to Dennis Carlisle by its subrogor, plus litigation costs and interest. Appellant further contends its recovery should neither be barred nor be limited to merely nominal damages, even though appellees received no consideration for their conveyances.
In situations where there has been a complete failure of title and a grantee has sought recovery from his immediate grantor, the maximum recovery allowed has been the purchase price paid. Allinder v. Bessemer C.I. L. Co., 164 Ala. 275,277, 51 So. 234, 235 (1909). With respect to an action against a remote grantor, however, there appears to be a difference of opinion as to whether damages are to be determined by the consideration paid by the grantee bringing the suit to his immediate grantor or by the consideration paid to the original grantor or covenantor, not exceeding in either case, however, the consideration paid for the conveyance by the defendant in the action. 20 Am.Jur.2d Covenants, Conditions, Etc., § 163 (1965). Here, however, the facts indicate that no consideration was ever paid to or received by any of the appellees, Albert Moore Owen, James R. Owen, Jr., or Cheryl C. Owen. Consequently, since there was no evidence that the remote grantors received *Page 487 
any consideration for their conveyances purportedly conveying title to the subject property, appellant, as subrogee of GECC, is entitled to an award of nominal damages only, for the breach of the covenant of quiet enjoyment contained in Albert Owen's deed, and not the amount of the mortgage made by GECC. See
20 Am.Jur.2d Covenants, Conditions, Etc., § 163 (1965). Furthermore, appellant is not entitled to recover an award of legal fees under the covenant of warranty by Albert Owen to defend the title of the grantee and his successor against all lawful claims. In Chicago, Mobile Development Co. v. G.C.Coggin Co., 259 Ala. 152, 66 So.2d 151 (1953), the Court held:
 "The duty to warrant and defend the title conveyed to the [grantees] against the lawful claims of all persons does not justify a charge for attorneys' fees whenever that title is brought into question in a court proceeding. As we have shown, it is no more than a warranty for quiet enjoyment. There is no authority which holds, so far as we can find, that under that warranty a duty arises to pay the expenses of litigation whenever that title is involved, but only in a suit with the claimant of an outstanding superior right, usually seeking to obtain possession in order to profit by that right. But even on the theory insisted on by the [grantees], this suit did not seek to call into question their warranty to complainant. Complainant neither sought nor obtained a decree against the [grantees] nor a decision as to any right against them on their warranty. But if it had done so, the warranty of appellant to defend them did not cover such a situation so far as we are able to discover in the law. No such authority has come to our attention. On the other hand, there is authority opposed to that theory. 21 C.J.S., Covenants, § 150, p. 1030, note 84. The cases noted are directly in point. Smith v. Nussbaum, Mo.App., 71 S.W.2d 82, 87; Myers v. Munson, 65 Iowa 423, 21 N.W. 759; see, 61 A.L.R. 167 et seq."
259 Ala. at 162, 66 So.2d at 158.
The facts of this case reveal that the legal actions here were not an attack on title by a third party possessing paramount title, but instead, were instigated by appellant or its subrogor, GECC. Thus, attorneys' fees in this instance are precluded under Chicago, Mobile Development Co. v. G.C. CogginCo., supra.
The judgment of the trial court is hereby reversed and the cause remanded to that court for a determination of the amount of nominal damages appellant is entitled to recover as consistent with the holding of this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] The deed provided that ". . . the Grantee, does hereby Grant, Bargain, Sell and Convey unto said Grantee. . . ."